UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JOHN MATTHEW PETTUS, as Administrator of the Estate of William E. Pettus, deceased, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CV 05-B-2496-NE |
| BRIAN HILL, in his individual capacity; JAMES FARRIS, in his individual capacity; JOE FIKE, in his individual capacity; LAWRENCE COUNTY/ LAWRENCE COUNTY COMMISSION; MOSE JONES, JR., in his individual capacity and in his official capacity as a Lawrence County Commissioner; HUTSON PARKER in his individual capacity and in his official capacity as a Lawrence County Commissioner; BRADLEY CROSS in his individual capacity and in his official capacity as a Lawrence County Commissioner; RANDALL LOUALLEN in his individual capacity and in his official capacity as a Lawrence County Commissioner; BARKLEY LENTZ in his individual capacity and in his official capacity as a Lawrence County Commissioner; CITY OF TRINITY, ALABAMA, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This case is presently pending before the court on Motion to Dismiss Amended Complaint, (doc. 31),[1] filed by defendant Joe Fike; Motion to Dismiss Amended Complaint, (doc. 34), filed by defendants Lawrence County/Lawrence County Commission [hereinafter "the County"] and the County Commissioners;[2] and Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, (doc. 56), filed by defendants Bryan Hill and James Farris. Plaintiff brought this action, pursuant to 42 U.S.C. § 1983, alleging defendants' violation of the Eighth Amendment of the United States Constitution based on their failure to provide medical treatment to William E. Pettus. Upon consideration of the record, the submissions of the parties , the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motions are due be granted.

## I. STANDARD OF REVIEW

The court informed the parties that it would consider evidence outside the record and decide defendants' Motions to Dismiss pursuant to the terms of Fed. R. Civ. P. 56. The parties were given the opportunity to submit additional argument and evidence. (*See* doc. 73.)

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]The Lawrence County Commissioners during the relevant time period were Moses Jones, Jr., Hutson Parker, Bradley Cross, Randall Louallen, and Barkley Lentz.

2

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. **DISCUSSION**[3]

On Thursday, September 9, 2004, William E. Pettus was sentenced to fifteen days in jail for contempt of court in Municipal Court of the City of Trinity, Alabama. Pettus was 77 years old at that time. He was taken to the Lawrence County jail to serve his sentence. Pettus was in the Lawrence County jail from Thursday night, September 9, 2004, until Saturday night, September 11, 2004.

Upon entering the Lawrence County jail, Pettus told Wilford Reed, the booking officer, that he was diabetic, had recently had a heart attack, and was taking a number of prescription drugs. While in jail, Pettus vomited blood, was occasionally unconscious, urinated on himself, was so weak that he had to have assistance to bathe and walk, and he could barely speak. Nevertheless, Pettus did not receive medical attention or his prescription medications.

On September 11, 2004, Sergeant Gary Pugh, a jail employee, told James Farris, Chief Administrator of the jail, that Pettus had asked for medical attention. Farris told Pugh to contact Trinity to come and get Pettus for purposes of providing him the requested medical attention. Trinity and the jail had an agreement that Trinity would provide medical treatment for its inmates housed in the Lawrence County jail. Pugh contacted Trinity and a City Magistrate gave the Lawrence County jail authority to release Pettus. Pettus was released

---

[3]The Statement of Facts is drawn from the evidence viewed in the light most favorable to plaintiff, the non-moving party, and all justifiable inferences have been drawn in her favor.

4

at 9:00 p.m. on September 11, 2004. Lawrence County Deputy Joe Fike was dispatched to drive Pettus from the jail to his home.

The following day, Pettus was admitted to the hospital. He had suffered acute renal failure caused by extreme dehydration and/or blood loss. He was in the hospital nine days.

## A. HILL, FARRIS, AND FIKE[4]

Hill, Farris, and Fink contend that the § 1983 claims against them in their individual capacities are due to be dismissed because plaintiff cannot establish that they violated Pettus's rights and because they are entitled to qualified immunity.

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id*. They are "immune" from suit. *Id*. We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id*.

*Ray v. Foltz*, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S.

---

[4]In his Amended Complaint, plaintiff names Hill, Farris, and Fike in their individual capacities only. The Amended Complaint supercedes the original Complaint that included claims against Hill, Farris, and Fike in their official capacities. The official-capacity claims are deemed dismissed.

5

730, 739 (2002)(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)))(internal citations and quotations omitted.).

The Eleventh Circuit uses a two-step analysis to determine whether a public official has qualified immunity: (1) the public official must establish that he was acting within the scope of his discretion; and (2), if the public official establishes that he was acting within his discretion, the plaintiff must show that the public official violated clearly established statutory or constitutional law. *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). The parties do not dispute that the individual defendants were acting within the scope of their discretion; therefore, the sole issue for the court is whether defendants' actions violated clearly established constitutional law.

Whether defendants' actions violated clearly established constitutional law also "consists of a two-part inquiry, set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)." *Harris v. Coweta County*, 433 F.3d 807, 812 (11th Cir. 2005).

> First we ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" [*Saucier*, 533 U.S. at 201] If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete. However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004)(citing *Saucier*, 533 U.S. at 201-02).

*Id*.

6

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736. The plaintiff bears the burden of demonstrating a constitutional violation. *Harris*, 433 F.3d at 811(citing *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002)); *Wood*, 323 F.3d at 877-78.

Plaintiff alleges that Pettus suffered a violation of his Eighth Amendment rights because defendants wrongfully denied him needed medical care.

> A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not "respond[ ] reasonably to the risk." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries.
>
> In *Farmer*, the Court was chiefly concerned with defining the level of intent required of an official to violate the Eighth Amendment – the subjective element of the tort; but *Farmer* also explained that two objective elements are part of an Eighth Amendment violation. First, an objectively substantial risk of serious harm to prisoners must exist. *See Id*. at 1977. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner. *See Id*. at 1983.

*Marsh v. Butler County*, 268 F.3d 1014, 1028-29 (11th Cir. 2001); *see also Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)(quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)(quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)))(internal quotations omitted). "Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir.

2007)(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "To satisfy the subjective element of deliberate indifference to [his] serious medical need, Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id*. (citations and internal quotations omitted). *Bozeman*, 422 F.3d at 1272.

### 1. Deputy Fike

Fike contends that he is entitled to judgment as a matter of law because plaintiff cannot establish that he subjectively knew Pettus had a serious medical need and was, therefore, at risk of serious harm. The court agrees.

The record shows that at approximately 9:00 p.m. on September 11, 2004, Fike, a Lawrence County Deputy Sheriff, was dispatched to the jail to give Pettus a "courtesy ride" to his home after Trinity authorized his release. (Doc. 83, Ex. J at 12-13.) No one told Fike of Pettus's medical condition when he arrived at the jail. (Doc. 83, Ex. H at 57; *id*., Ex. J at 16-18, 21.) Fike testified that he did not realize Pettus was ill; he said, "I realized that he was an elderly gentleman and maybe he had . . . health problems in the past or something. . . . [H]e seemed okay during . . . my brief time being with him." (*Id*., Ex. J at 18.) The court notes that Pettus was diabetic, had high blood pressure, and had suffered a heart attack prior to going to jail. These medical conditions are generally not apparent by observation. Nothing in the record indicates anything obvious or significant occurred during the brief time Fike drove Pettus home that would have alerted a non-medically trained individual, like Fike,

8

to know that Pettus has a serious medical condition and was in need of urgent treatment. Although the record contains evidence that Pettus had vomitted blood and lost consciousness,[5] no such obvious signs of illness occurred during the drive from the jail to Pettus's home. Also, Fike testified that Pettus did not tell him he was ill or ask for medical attention.

The court finds there is insufficient evidence to find that Fike, during the short time he was with Pettus, knew Pettus was in need of urgent medical care. Therefore, the court finds no evidence that Fike violated Pettus's Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to Pettus's medical condition. Fike's Motion to Dismiss/Motion for Summary Judgment is due to be granted and all claims against him are due to be dismissed.

**2. Sheriff Hill**

Plaintiff alleges that Hill acted intentionally or deliberately indifferent to his medical condition, that he failed to train the jailers, and that he failed to develop, to implement and/or to maintain policies or customs or protocols for medical treatment at the jail.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior

---

[5] The court assumes that vomiting blood and losing consciousness are signs of a serious medical condition that a non-medically trained person would recognize.

or vicarious liability."[6]  *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007)(quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Therefore, Hill is "liable only if [he] personally participated in the allegedly unconstitutional conduct or if there is a causal connection between [his] actions and the alleged constitutional deprivation."  *Id*. (quoting *Cottone*, 326 F.3d at 1360)(internal quotations omitted).

The record contains no evidence that Hill was aware that Pettus had been incarcerated – much less that he had serious medical needs during his incarceration – until he received Pettus's notice of a claim in February 2005.  (Doc. 83, Ex. A at 39-40.)  Therefore, the court finds Hill is entitled to judgment as a matter of law on plaintiff's claims to the extent such claims are based on allegations of Hill's personal participation in the allegedly unconstitutional conduct.

Plaintiff may still establish Hill is liable for violation of his Eighth Amendment rights if he can establish a "causal connection" between Pettus's alleged constitutional deprivation and Hill's actions by proving –

> either (1) a custom or policy that results in deliberate indifference to constitutional rights or facts that support an inference that the supervisors directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so; or (2) a history of widespread abuse that put the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

---

[6]The court notes that plaintiff has not sued the jail employees with whom he had direct contact while he was in the Lawrence County jail.

*West*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)(quoting *Cottone*, 326 F.3d at 1360; *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999))(internal quotations and citations omitted)

The record contains no evidence that Hill ever directed jail employees to act unlawfully or that he knew jail employees were acting unlawfully. The customs and policies of the Lawrence County jail for providing medical treatment for inmates, which are facially constitutional,[7] did not result in deliberate indifference to the rights of inmates. Moreover, although plaintiff points to complaints and lawsuits regarding provision of medical treatment to inmates,[8] there is no evidence of "widespread abuse" sufficient to notify Hill he needed to take action.

The court finds plaintiff has failed to present evidence sufficient to allow a reasonable jury to find that Hill's conduct caused his alleged constitutional deprivation. Therefore, the court finds that Hill is entitled to judgment as a matter of law and plaintiff's claims against him are due to be dismissed.

---

[7]"An official cannot be held liable just for instituting a facially constitutional policy." *Marsh*, 268 F.3d at 1036.

[8]The court notes that plaintiff has not proved the complaints were meritorious. *West*, 496 F.3d at 1329 (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)("Brooks never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity.")). Nevertheless, each of the three federal cases identified by plaintiff were dismissed prior to service of the Complaint. *See generally Cagle v. Lawrence County*, CV 03-B-00875-S; *Jones v. Lawrence County Jail*, CV 04-C-02853-NE; *Dotson v. Lawrence County Sheriff Department*, CV 04-PWG-03393-NW. These lawsuits did not provide notice to Hill of widespread abuse.

### 3. Jail Administrator Farris

As set forth above, plaintiff can only prove a claim against Farris if he can show that Farris personally participated in the allegedly unconstitutional conduct or if there is a causal connection between his actions and the alleged constitutional deprivation.

The evidence shows that Farris was first told Pettus had requested medical treatment on September 11, 2004, by Pugh.[9] (Doc. 83, Ex. C at 27, 35-36, 52.) At that time, Farris told Pugh to contact Trinity so it could arrange medical treatment for its inmate, Pettus. Nothing in the record indicates that Farris observed Pettus personally or that he was given specific information that Pettus's medical condition required urgent care. Therefore, the court finds no evidence that Farris personally participated in the alleged deprivation of Pettus's constitutional rights by denying him medical treatment.

The record contains no evidence that Farris ever directed the jail employees to act unlawfully or that he knew that the jail employees were acting unlawfully. Moreover, nothing in the record shows that Farris established any customs or policies that resulted in deliberate indifference to the rights of the inmates. The record contains no evidence to

---

[9]Plaintiff points to testimony from Wilford Reed, the booking officer, that he told Farris on Friday morning about Pettus's medical condition. However, Reed testified that he was only "pretty sure" he talked with Farris on Friday and he did not recall what Farris said. (Doc. 58, Ex. J at 34-35.) He did not testify that he told Farris that Pettus needed medical treatment. In fact, Reed testified that he did not believe that Pettus was sick on the morning of September 10, 2004, and that Pettus had not asked for medical attention at that time. (*Id*. at 28-29, 37.)

support a finding of "widespread abuse" sufficient to notify Farris he needed to take action to correct the denial of need medical treatment for inmates.

The court finds plaintiff has failed to establish that Farris's conduct caused his alleged constitutional deprivation. Therefore, the court finds that Farris is entitled to judgment as a matter of law and plaintiff's claims against him in his individual capacity are due to be dismissed.

Because the court finds that defendants Hill, Farris, and Fike did not violate Pettus's Eighth Amendment rights, it need not determine whether the law was clearly established at the time. *See Harris*, 433 F.3d at 812.

## B. COUNTY DEFENDANTS

In his Amended Complaint, plaintiff alleges claims against the County Commissioners, in their individual and official capacities, and the County.

### 1. The County Comissioners – Cross, Jones, Lentz, Louallen, and Parker

#### a. Official Capacity Claims

In *Kentucky v. Graham*, the Supreme Court clarified the distinction between suits against officials in their personal capacities and suits against officials in their official capacities:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Graham*, 473 U.S. 159, 166 (1985)(internal citations and quotations omitted). The Eleventh Circuit has recognized this principle's application to local government entities. "For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir.1989). When suit is also filed against the government entity, it is appropriate for the Court to dismiss the named defendants in their official capacities as "redundant and possibly confusing to the jury." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991).

In this case, the claims against the Commissioners in their official capacities are duplicative of the claims against the County. Therefore, plaintiff's claims against the Commissioners in their official capacity are due to be dismissed.

### b. Individual Capacity Claims

The Commissioners contend they are entitled to absolute legislative immunity in their individual capacities. (Doc. 35 at 11.) The court agrees.

The Eleventh Circuit has held that "[l]ocal legislators are entitled to legislative immunity in this Circuit." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 15 (11th Cir.), *cert. denied*, 502 U.S. 810 (1991). "The absolute immunity inquiry" depends upon whether the local legislators were engaging in legislative activity in the particular case under consideration. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982), *cert. denied*, 460 U.S. 1039 (1983). *See also Brown*, 960 F.2d at 1011 (legislators have absolute

immunity under § 1983 when they perform legislative acts). The immunity "extends only to actions taken within the sphere of legitimate legislative activity." *Id.* Therefore, in the present case, whether the Lawrence County Commissioners are entitled to absolute immunity "depends upon whether when making budgetary decisions — including budgeting for the county jail — they were acting in their legislative capacity." *See Woods v. Gamel*, 132 F.3d 1417, 1419-20 (11th Cir. 1998). In other words, "was approving the budget a 'legislative act'"? *See id.*

In *Woods*, the Eleventh Circuit held that Marshall County Commissioners were entitled to absolute legislative immunity in their individual capacities when they voted to pass the county budget. *Id.* at 1420. The court noted:

> Voting is not automatically a legislative act. *See Crymes v. DeKalb County, Ga.*, 923 F.2d 1482, 1484 (11th Cir.1991) (act of voting alone does not make act legislative if the vote simply enforces existing policy instead of creating policy). But, in this case, the voting that was needed to pass the county budget was legislative.
>
> The statute under which the commissioners were given the authority to pass this budget requires an annual budget for all county expenses. Thus, a decision to provide more funds for the jail necessarily results in fewer funds for other public projects: the budget creates policy by allocating limited resources. *See Rateree v. Rockett*, 852 F.2d 946, 950-51 (7th Cir.1988) ("Budgetmaking is a quintessential legislative function reflecting the legislators' ordering of policy priorities in the face of limited financial resources"). Because the budget sets spending priorities, the passing of the budget is both policymaking and of general application, affecting all county residents.
>
> Although we have not specifically ruled on the applicability of legislative immunity to local budgetary decisions, other circuits have addressed this issue and have held that absolute immunity applies to budgetary decisions.

15

> *See, e.g., Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir.1995) (budget decisions generally made in a legislative capacity); *Rateree*, 852 F.2d at 950 (The budgetary process is a "uniquely legislative function."). *Cf. Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir.1997) (local legislators "absolutely immune from personal liability under 42 U.S.C. § 1983 for making legislative decisions of the sort present here, including budgetary allocations"). We agree with those decisions. The budgetary decisions made by defendants for funding the county – including the jail – are legislative acts protected by legislative immunity.

*Id.* Consequently, the court concluded that the commissioners in their individual capacities were entitled to absolute immunity from the suit, and granted their motion to dismiss. *Id.*

Because the Commissioners' budgeting decisions are legislative acts protected by legislative immunity, the Commissioners are entitled to absolute immunity in their individual capacities. Therefore, their motion to dismiss is due to be granted.

**2. Lawrence County and the Lawrence County Commission**

The court notes that Alabama counties have no role in operating, administering, or overseeing jails. *See* Ala. Code § 11-14-10. In *Marsh v. Butler County*, the Eleventh Circuit noted:

> Under Alabama law, the County is not responsible for assuring procedures are in place for inmates to get medical care. Alabama law assigns counties a "limited role in building and funding the jails." Therefore, the County is not a responsible party for the alleged tort of deliberate indifference to Owens's medical needs. This claim was properly dismissed against the county. . . . Alabama counties have no responsibility for daily operation of county jails and no authority to dictate how jails are run.

*Marsh*, 268 F.3d 1014, 1026 n.6, 1027 (11th Cir. 2001)(quoting *Turquitt v. Jefferson County*, 137 F.3d 1285, 1290 (11th Cir.), *cert. denied* 525 U.S. 874 (1998)). The sheriff, not the

16

county, "has the legal custody and charge of the jail in his county and all prisoners committed thereto." *See* Ala. Code § 14-6-1. Therefore, the sheriff is responsible for the day-to-day operations of the county jail; the county is only responsible for building the jail and providing the sheriff with funding to run the jail.

Therefore, the County cannot be liable for any claims regarding the control, operation, or policies of the jail or for the sheriff's hiring, training, or supervision of jail employees. All claims against the County based on the operation of the jail or the hiring, training, or supervision of jail employees are due to be dismissed.

"The duties of [Alabama] counties with respect to the jails are limited to funding the operation of the jail and providing facilities to house the jail." *Turquitt*, 137 F.3d at 1289 (internal citations and quotations omitted). Therefore, the County is liable for Pettus's alleged constitutional deprivation only if plaintiff can prove the County's "failure to maintain the Jail constituted deliberate indifference to a substantial risk of serious harm to the prisoners." *Marsh*, 268 F.3d at 1027.

Section § 14-6-19 of the Alabama Code provides:

> Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide for themselves.

Ala. Code § 14-6-19 . This statute places a duty on the County to pay for "medicines and medical attention" for indigent prisoners. *Ex parte University of South Alabama*, 812 So. 2d 341, 345-46 (Ala. 2001)("This section became effective in 1852, and allows a medical

17

provider to sue to recover charges for medical services rendered to inmates in the county jail who are unable to pay for medicines or medical services.")(citing *Malone v. Escambia County*, 116 Ala. 214, 22 So. 503 (1897)); *see also Gaines v. Choctaw County Comm'n*, 242 F. Supp. 2d 1153, 1161 (S.D. Ala. 2003).

The Eleventh Circuit has held:

> A local government can be directly responsible for a constitutional violation due to its acts or omissions. A local government, however, will be liable under section 1983 only for acts for which the local government is actually responsible. Alabama counties have no responsibility for daily operation of county jails and no authority to dictate how jails are run, but the County is charged with erecting and maintaining jails. Therefore, the County will have violated [a plaintiff's] Eighth Amendment rights if its failure to maintain the Jail constituted deliberate indifference to a substantial risk of serious harm to the prisoners.

*Marsh*, 268 F.3d at 1027 (emphasis added).

Therefore, the County may be liable if plaintiff can prove that its failure to fund medical treatment for inmates caused the alleged Eighth Amendment violation. *See Shaw v. Coosa County Commission*, 330 F. Supp. 2d 1285, 1289 (M.D. Ala. 2004).

Plaintiff contends that the record contains evidence "that the jail was understaffed and there was a need for jail medical personnel and the request[s] were made and both Sheriff Hill and his predecessor . . . had tried to properly staff the jail with jailers and medical staff personnel. However, the County Commission would not approve it." (Doc. 90 at 27.) The County contends that plaintiff's claim based on its failure to fund is due to be dismissed because plaintiff has not shown that the County had the "deliberate intent" to under-staff the

18

jail because he has not shown "any pattern of injuries linked to the County's budgetary decisions." (Doc. 92 at 8 [citing *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004)].) The County also argues that dismissal of plaintiff's claims is appropriate because the record contains no evidence showing that the alleged lack of funding caused Pettus's lack of treatment. (*Id*. at 10-11.)

The evidence shows that the jail had specific policies for providing medical treatment to inmates, including dispensing prescription medicines. Although plaintiff **alleges** the County had a "practice or policy" of failing to fund on-site medical facilities and treatment for inmates, he has not presented sufficient evidence to **prove** that the County, at the time it made its funding decisions, acted with "deliberate indifference as to [the] known or obvious consequences" of such funding decisions or that such funding decisions caused Pettus's injuries. *See McDowell*, 392 F.3d at 1291. Based on the record, the court finds plaintiff "cannot establish or seriously dispute that [the County] would anticipate that inmates would not receive timely medical attention" at the time it made its decision not to fund an on-site medical facility and on-site medical staff. *See id*. at 1292.

Therefore, the court finds that plaintiff has not established that the County is liable for Pettus's injuries. Therefore, the County's Motion for Summary Judgment is due to be granted and all claims against it are due to be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendants are entitled to judgment as a matter of law. An Order granting defendants' Motions to Dismiss/Motions for Summary Judgment, (docs. 31, 34, and 56), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 31st day of March, 2008.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE